James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Wilbur C. WILLIAMS, Individually and doing business as Baton Rouge Oil Company and Wilbur C. Williams and Aswell Courville, Individually and as a partnership, doing business as WWC Trucking Service, Defendants.

Civ. A. No. 2408.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Dec. 18, 1962.

Truett E. Bean, Trial Attorney, U. S. Department of Labor, Office of the Solicitor, Dallas, Tex., for plaintiff.

Eugene W. McGehee, McGehee & McKinnis, Baton Rouge, La., for defendants.

WEST, District Judge.

Pursuant to authority vested in him by the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 201, the Secretary of Labor instituted this action against Wilbur C. Williams, individually and doing business as Baton Rouge Oil Company, and Wilbur C. Williams and Aswell Courville, individually and as a partnership, doing business as WWC Trucking Service, to recover for Albert Efferson, John J. Efferson and William B. Efferson wages and overtime pay alleged to be due under the act. On behalf of Albert Efferson it is alleged that he worked for respondents, jointly, as a night watchman, averaging 64 hours per week, for eleven weeks, and that he was underpaid, pursuant to the provisions of the Fair Labor Standards Act, the sum of $217.50. On behalf of John J. Efferson it is alleged that he worked an average of 65 hours per week, during sixteen weeks, and that he averaged working 100 hours per week during four weeks, and was underpaid, under the provisions of the Fair Labor Standards Act, the sum of $841. On behalf of William B. Efferson it is alleged that he worked an average of 65 hours per week during eleven weeks, and that he worked an average of 100 hours per week during four weeks, and, that under the provi-sions of the Fair Labor Standards Act, he was underpaid the sum of $485.

This suit was filed on December 5, 1960, and answer was filed on January 28, 1961. On March 31, 1961, complainant filed requests for admissions under Rule 36 of the Federal Rules of Civil Procedure, and also, on the same day, filed interrogatories directed to respondents under Rule 33 of the Federal Rules of Civil Procedure. No answers to the requests for admissions were ever filed, but on July 8, 1961, respondents filed answers to plaintiff's interrogatories. Previously, however, on May 15, 1961, the plaintiff filed a motion to strike defendants' answer and for judgment by default pursuant to Rule 37(d) of the Federal Rules of Civil Procedure. On January 19, 1962, this motion was granted, and the case was subsequently set down for hearing on the question of quantum only. Some time after this matter was heard by this Court, and submitted, the defendant, Wilbur C. Williams, on October 9, 1962, filed a motion for leave to amend his answer and attached thereto a certified copy of the discharge in bankruptcy dated March 13, 1962, whereby the said defendant, Wilbur C. Williams, doing business as Baton Rouge Oil Company, and as WWC Trucking Company, was duly adjudged a bankrupt and discharged from all debts and claims which, by the Act of Congress relating to bankruptcy, were made provable against his estate, except such as are, by the Act, expressly excepted from the operation of a discharge in bankruptcy.

Now, after hearing the evidence, and after having received and studied the briefs filed by counsel for all parties to this suit, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### 1.

The Court finds that the employees involved in this suit, in the performance of the work for which they claim unpaid

wages, were and are covered by the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

### 2.

The records pertaining to hours worked and payroll data kept by respondents were so completely inadequate as to be of no value whatsoever to the Court in arriving at a determination of this matter. The only records filed in evidence were a series of cards purporting to show hours worked and pay received by these employees. But the figures on these cards cannot be reconciled with any of the testimony given at the trial, including that given by the respondent, Aswell Courville, and hence, the information contained thereon is deemed to be completely unreliable.

### 3.

Albert Efferson worked for the respondents, jointly, as a night watchman for a total of 11 weeks between February 29, 1960, and May 15, 1960. During that time, he averaged working 9 hours per night, 7 nights per week, or a total of 63 hours per week.

### 4.

The only time missed from work by Albert Efferson was one night, or 9 hours, during which he was sick.

### 5.

This employee, pursuant to the provisions of the Fair Labor Standards Act, was entitled to be paid on the basis of $1.00 per hour for the first 40 hours worked each week, plus $1.50 per hour for the 23 hours over 40 hours that he worked each week. On this basis, and after deducting $10.60 for the night on which he was unable to work, Albert Efferson should have been paid, pursuant to the provisions of the Fair Labor Standards Act, a total of $808.90.

### 6.

It is admitted by all counsel that Albert Efferson was, in fact, actually paid by the respondents during this 11 week period the total sum of $605.

### 7.

John J. Efferson worked for the respondents, jointly, for 20 weeks between November 30, 1959, and April 17, 1960. He worked primarily as a truck driver, but during one 4 week period, contained within the 20 week period mentioned, he also worked as a night watchman. Then too, during times when his truck was disabled, or the weather was bad, he sometimes worked in the repair shop or at the filling station.

### 8.

During 6 weeks of this time he was employed to drive a large tandem truck at an hourly wage of $1.70. During the remaining 14 weeks he was employed at the rate of $1.50 per hour to drive a "bob-tail" truck. No pay was agreed upon insofar as the night watchman work was concerned, and apparently none was paid.

### 9.

There are no records available by which to ascertain the number of hours actually worked by this employee, and unfortunately, his testimony is as vague and uncertain as are the records. In spite of the fact that this employee contends he averaged working 11 hours per day, 6 days per week, this Court concludes differently. His testimony was far from convincing, and when carefully considered, simply makes such a conclusion improbable, if not impossible. However, it is concluded that he worked more hours than those for which he was paid.

### 10.

This Court therefore concludes that John J. Efferson averaged working 49 hours per week as a truck driver during the 20 weeks of his employment with respondents. During 6 of those weeks he was employed at $1.70 per hour, which amount he was entitled to receive for the first 40 hours worked each week. For the remaining 9 hours per week worked during those weeks he was entitled, under the Fair Labor Standards Act, to receive time and a half, or $2.55 per hour.

This entitled him, under the Act, to a total of $545.70 for those 6 weeks' work. During the remaining 14 weeks he was employed driving a "bob-tail" truck at an hourly wage of $1.50, which amount he is entitled to receive during the first 40 hours worked each week. For the remaining 9 hours worked each week during that period, he was entitled to be paid on a time and a half basis, or at the rate of $2.25 per hour. This entitled him to a total of $1,123.50 for those 14 weeks. In addition to this, he worked as a night watchman during 4 weeks in February, 1960, working an average of 4 hours per night, 7 nights a week. For this employment he was entitled to receive the minimum wage provided for under the Fair Labor Standards Act of $1.00 per hour, or a total of $112. This amounts to a total of $1,781.20 to which this employee, John J. Efferson, was entitled to be paid under the Minimum Wage Provisions of the Fair Labor Standards Act during the 20 weeks of his employment with respondents.

### 11.

It was agreed and stipulated by all parties that this employee, John J. Efferson, was actually paid by the respondents a total of $1,270.15 for his work during that period.

### 12.

The next employee, William B. Efferson, worked for the respondents, jointly, essentially in the same capacity as did John J. Efferson, for a period of 11 weeks between February 1, 1960 through April 17, 1960, except that when working as a truck driver, he drove "bob-tail" trucks only. He, too, worked as a night watchman during a 4 week period in February, 1960.

### 13.

The records pertaining to the employment of William B. Efferson are in the same deplorable condition as those pertaining to the other employees, and his testimony is no more convincing than was that of the other employees. But here also, the Court is convinced that he did work hours for which he was not paid, and hence we must, in this case as in the others, arrive at an equitable average in order to determine the amount of underpayment to which he is now entitled to recover.

### 14.

It is concluded, after study of all the evidence, that William B. Efferson averaged working as a truck driver 49 hours per week for 11 weeks of his employment, and that he averaged working 28 hours per week for 4 weeks as a night watchman. For the first 40 hours of each week that he worked as a driver of a "bob-tail" truck, he was entitled to be paid at the rate of $1.50 per hour, and for the remaining 9 hours of each week that he worked as a truck driver, he was entitled to be paid on a time and a half basis, or at the rate of $2.25 per hour. This would entitle him to a total of $882.75, representing wages earned as a truck driver. In addition to this, he was entitled to be paid at the minimum wage provided by the Fair Labor Standards Act of $1.00 per hour for 28 hours per week for 4 weeks' work as night watchman, or a total of $112. This makes a total of $994.75 to which William B. Efferson is entitled to be paid under the Minimum Wage Provisions of the Fair Labor Standards Act for the 11 week period during which he worked for these respondents.

### 15.

It was agreed and stipulated that this employee, William B. Efferson, actually received from the respondents a total of $898.50 for his work during that 11 week period.

### 16.

Wilbur C. Williams, respondent herein, doing business as Baton Rouge Oil Company and also doing business as WWC Trucking Company, was duly adjudged a bankrupt on a petition filed by him on June 8, 1961, and was discharged from all debts dischargeable under the Bank-

ruptcy Laws by order of the Referee in Bankruptcy for the Eastern District of Louisiana, Baton Rouge Division, on March 13, 1962.

## CONCLUSIONS OF LAW

### 1.

Jurisdiction over this matter is conferred upon this Court by the provisions of Title 28 U.S.C.A. §§ 1337 and 1345.

### 2.

█ In claims for unpaid wages or overtime pay under the provisions of the Fair Labor Standards Act, Title 29 U.S.C.A. § 201 et seq., while the claimant has the burden of proving his claim, he is deemed to have carried this burden if he proves that he has, in fact, performed work for which he was improperly paid, and if he has produced sufficient evidence to show a reasonable approximation of the amount due as a matter of just and reasonable inference. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. The burden then shifts to the defendant to come forward with evidence to negative the reasonableness of the inferences to be drawn from the employee's evidence.

### 3.

█ The mere fact that the employee cannot prove to a certainty the amount of wages due does not mean that no damages should be awarded nor that the award should be merely nominal. Difficulty of ascertainment of the precise amount due must not be confused with the right of recovery. Mitchell v. Mitchell Truck Line, Inc., 5 Cir., 286 F.2d 721.

### 4.

█ In the present case, while the evidence produced leaves much to conjecture as to the exact amounts of underpayments of wages, nevertheless, the plaintiff has sufficiently carried the burden insofar as proving that these employees did, in fact, work some hours for which they were not properly compensated in accordance with the provisions of the Fair Labor Standards Act. Therefore, an award must be made based upon estimates, opinions, and reasonable inferences to be drawn from the evidence and the testimony available. Mitchell v. Mitchell Truck Line, Inc., supra.

### 5.

██ After careful consideration of all of the evidence adduced on the trial of this case, and in accordance with the Findings of Fact made herein, this Court is of the opinion that the reasonable inferences to be drawn from the evidence adduced at the trial of this case support an award for underpayment of wages against Wilbur C. Williams, individually and doing business as Baton Rouge Oil Company, Wilbur C. Williams and Aswell Courville, individually and as partners doing business as WWC Trucking Service, jointly and in solido, and in favor of Albert Efferson in the amount of $203.90, and in favor of John J. Efferson in the amount of $511.05, and in favor of William B. Efferson in the amount of $96.25, said judgment to be subject, of course, to the discharge in bankruptcy hereinbefore referred to insofar as it pertains to the respondent, Wilbur C. Williams.

Judgment to be prepared in accordance herewith by counsel for plaintiff.