W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

D. B. HARRIGILL, Defendant.

Civ. A. No. 3141.

United States District Court
S. D. Mississippi,
Jackson Division.

March 6, 1963.

Beverly R. Worrell and Hubert F. Owens, U. S. Dept. of Labor, Office of Solicitor, Birmingham, Ala., for plaintiff.

Charles Carter, Carter & Mitchell, Jackson, Miss., for defendant.

COX, Chief Judge.

This is a suit under 29 U.S.C. 1952 ed. § 216 by the Secretary of Labor on behalf of Solon W. Blades for wages allegedly due him from July 26, 1959, to January 12, 1961. Harrigill had a contract with the postoffice department, dated May 31, 1958, to haul the United States mail under what is known as a Star Route Contract from Brookhaven to Hattiesburg on secular days and from Brookhaven to

Monticello on each Sunday. Blades was the driver of this truck without a helper. The driver kept a daily time card which he turned in at the end of each week when it was posted to the books of the employer. The express understanding between the parties was that the driver was to be paid one dollar an hour for each hour he worked according to his own report, which he kept and turned in to the office. The contract with the postoffice department required the mail to be picked up at a given hour on each end of the route. Three and one-half hours were allotted to travel between Brookhaven and Hattiesburg each way. When the truck arrived in Hattiesburg at 9:30 A. M. the driver parked the truck and was off the payroll until he picked the truck up about 3:00 P.M. Upon his arrival in Brookhaven about 6:30 P.M. he parked the truck at a service station where he got it the next morning. On Sundays the schedule was less rigid, but the driver was on the payroll on Sunday from the time he left Brookhaven for Monticello until his return to Brookhaven.

The driver contends that he worked about an hour more each day than he showed on his report. He kept no diary or record of any kind other than the daily report which he filled out each day for the defendant as a part of his duty. He never made any complaint to the defendant about not being paid for all time worked. He never made any claim for any more time than the time for which he was paid and he was fully paid for all time which he reported working. The Department of Labor prepared a theoretical account showing the defendant to owe Blades approximately nine hundred dollars with interest.

Significantly, Blades said that he could not at this time construct an account showing exactly the amount of the time which he worked each day which he did not report. His estimate was that he worked about an hour a day more than he reported and more than the time for which he was paid.

The evidence shows that the postoffice department fixed the schedules for these Star Route Contracts and undertook in good faith to fix the reasonable amount of time necessary to traverse the routes and do the work, barring accident or breakdown.

Another driver who had driven this route previously to the employment of Blades, said that he was never cramped for time and could traverse the route and do the work within the scheduled time and have time to get a cup of coffee and the like as he always did. The testimony further showed that the schedule allotment of time fixed in these contracts was ample for this service but that one and four tenths hours each week was arbitrarily added thereto so as to assure ample time for such service. For the first five months Blades first went to the postoffice at Brookhaven and then to the railroad station before commencing his route, but after December 10, 1959, he was directed to go first to the railroad station to pick up the bags of mail and then go by the postoffice before commencing his route. This change did not reasonably and necessarily add any additional time to the performance thereof.

The evidence showed that Blades was paid one dollar an hour for each forty hour week with a dollar and fifty cents for each overtime hour during each week in which he worked. On one occasion after returning home and finishing supper Blades was summoned by the defendant's wife to take his truck and go to help another driver who was broken down on another route and Blades spent approximately five hours on this trip which he voluntarily never reported and for which he was never paid anything. It is an inescapable conclusion as to this incident that he never understood or intended such service to be within the scope or range of his employment, and never intended to charge anything for it and performed such service gratuitously with no intention of including it in any contract. Such service was not in any wise or to any extent connected with his contract of employment on such different Star Route. The defendant had no right to his service on such occasion and he incurred no ex-

press obligation to him therefor because nothing was said to that effect and there was no implied contract for any compensation under the circumstances stated.

■ The investigators have obviously instilled in the mind of Blades an after acquired second thought at this late time that he has been mistreated and underpaid, but he unfortunately does not have, and has not produced, any cogent and impelling evidence of any credible and probative value which persuades the Court to the view advanced by the plaintiff. The positive testimony of the defendant to the contrary completely overwhelms such contention and the inescapable and all impelling inferences show that Blades was paid for every hour he worked. This Fair Labor Standards Act is designed and intended as a shield to protect the unwary and not as a sword on which to impale an unsuspecting employer who is engaged in a business and honestly exercises a reasonable effort in good faith to comply with all the required provisions of such act.

■ Blades kept a daily record of all time actually spent by him in performing his service for the defendant as a part of his duty and while the facts were then perfectly clear in his mind. He had no reason whatever to falsify his reports and he kept them as a part of his daily duty to report his actual time spent in his work to the office. He stated to the Court under oath that he had no way of advising the Court as to any unreported time spent at any time in this service to the defendant. There was testimony to the effect that a small amount of time each day was spent in preparing to go on to the job and in picking up the mail at Brookhaven and in parking his truck at Hattiesburg but his honest reports which were posted each day, completely belie and refute his efforts to impeach the honesty and accuracy thereof. Such re-

ports and the testimony and circumstances adduced here in opposition to this claim and the inferences therefrom render such testimony on behalf of the plaintiff as imaginative and incredible and independable. An employee cannot be heard in a court of equity to say that he *deliberately* and voluntarily falsified reports which he was obligated to make truthfully and accurately to the employer and then prevail on account of any such iniquitous misconduct. Indeed, the duty of an employer to keep accurate records may not be delegated but neither may an employee be rewarded by a court of good conscience for self-serving rascality and unfaithful neglect and abuse of positive duty.

The defendant did not "suffer or permit to work" the employee within the period in suit in excess of the time for which he was actually paid.[1] The overwhelming weight of the evidence in this case shows that Blades could have done and did do all of the work which he did in the time in which he reported that he did it, and the Court does not believe that he worked any time which he did not report.

■ Insofar as the duties of the employee related to handling freight, § 207 of the Fair Labor Standards Act governing maximum hours and compensation for overtime involved in that phase of this work, does not apply, but there is nothing in the Motor Carrier Act to forestall recovery of minimum wages due, if any, under § 206 of the act.[2]

■ The money received by the employee for handling freight on these trips must be taken into account in determining whether or not he was paid the minimum wage for all hours worked and when so done, that question must be answered in the affirmative.[3]

It is not important that the defendant had no record showing the time actually

1. Tobin, Secretary of Labor v. Alma Mills, (4 C.A.) 192 F.2d 133.

2. Overnight Motor Transport Company v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Plunkett v. Abraham Packing Company, (6 C.C.A.) 129 F.2d 419.

3. Williams v. Jacksonville Terminal Company, 315 U.S. 386, 62 S.Ct. 659, 86 L. Ed. 914; Cf: United States v. Klinghoffer Brothers Realty Corporation, (2 C.A.) 285 F.2d 487.

spent in *each* daily activity. He had accurate records made up each day and turned in each week by Blades showing all compensable time actually worked each day. These records were made when the facts were fresh in the mind of this employee and with no necessity, intention or purpose to deceive anybody at the time as to his exact schedule. The defendant arbitrarily added one and four tenths hours each week to Blades' report and paid him accordingly without a murmur for about seventeen and a half months during which time he was thus fully paid each week. Blades never once reported any additional time served or claimed anything from the defendant therefor until he authorized the plaintiff, five months after quitting this job, to bring this suit.

■■ The scintilla of evidence rule is not in effect in the Federal Court. Plaintiff has not proved by the greater weight of the more convincing evidence, with the reasonable inferences adduced and added thereto, that he ever worked one hour for which he was not paid at least one dollar, but the overwhelming weight of the evidence here is to the contrary. The facts and circumstances and the fair inferences deducible therefrom in the case at bar are materially different from those in the cases relied upon by the plaintiff.[4] It is not the nature or character or quality of plaintiff's evidence as to damages which is deficient here as is spoken of in those cases. The question here is not as to the uncertainty and indefiniteness of the amount of uncompensated time as in those cases. The plaintiff has simply failed to prove by the greater weight of the more convincing evidence that Blades ever worked for any time for which he was not paid. The defendant's records accurately reflect the correct time during which Blades worked and the defendant added some additional time thereto for good measure and complete safety against the attack here and he has fully compensated the employee therefor. It is the view of the Court that the defendant has shown good faith in an honest effort to comply with this law in this case. There is not a scintilla of evidence in this case to even so much as indicate that the defendant has tried to evade or avoid this law or to cheat or deprive Blades of anything. This case does not present any fact or circumstance to show that this employer has violated the letter or spirit of this act.

The employee has been paid his statutory minimum wage for every hour for which he worked for the defendant during the period in suit. The plaintiff has not proved his case by a preponderance of the evidence to the contrary. A judgment dismissing his suit with prejudice but without cost may be presented for entry.

4. Anderson v. Mt. Clemens Pottery Company, 328 U.S. 680, 66 S.Ct. 1187, 90 L. Ed. 1515; Foremost Dairies v. Ivey, (5 C.A.) 204 F.2d 186; Mitchell v. Mitchell Truck Line, Inc., (5 C.A.) 286 F.2d 721; Mitchell v. Riley, (5 C.A.) 296 F.2d 614.