Ben FOSTER, Ephraim McHugh, Samson
Foster and Sidney DeJean

v.

Willie IRWIN, d/b/a Irwin Truck Line.

Civ. A. No. 3241.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Sept. 27, 1966.

Johnnie A. Jones, Baton Rouge, La., for plaintiffs.

W. P. Macmurdo, Percy, Macmurdo & Gray, Baton Rouge, La., for defendant.

WEST, District Judge.

This is an action brought pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), to recover wages and overtime compensation allegedly earned but not paid during the period December 1, 1963 through September 30, 1964. The plaintiffs were, during that time, employed by defendant as truck drivers to haul United States mail between the main post office in Baton Rouge, Louisiana, and the various branch offices and railroad terminals in and around the city. It is conceded by the defendant that the parties to the suit and the employment involved are subject to the provisions of the Fair Labor Standards Act, and the only dispute here is a factual one concerning the number of hours actually worked by the plaintiffs, and the amount of pay actually received by them.

Plaintiffs contend that they were not paid at the required minimum rate of $1.25 per hour for forty hours per week, and $1.87½ per hour for time worked in addition to forty hours per week. Defendant on the other hand contends that the plaintiffs were actually paid in excess of the minimums required by the act.

When the case was tried, defendant filed in evidence the payroll records for the period involved showing the actual amounts paid to each of the plaintiffs. While plaintiffs' testimony did not coincide exactly with these figures, nevertheless they did not refute the payroll records and the Court accepts them as showing the amount of pay actually received by the various plaintiffs during the period involved. Actually, as so often happens in these cases, plaintiffs really had no idea at all how many hours they worked or even how many hours they were supposed to work. They also did not know their exact rate of pay and they had no idea how much, if any unpaid wages were due. They only knew that some investigator for the Department of Labor told them that they had been underpaid, and that they could sue if they wanted to, but that the Department of Labor would not enter suit for them. On

the other hand, the defendant has no records to show the hours worked by the various plaintiffs. His only records pertain to the wages actually paid. Thus, from this testimony, or lack of testimony, the Court must decide whether or not the plaintiffs have been paid in accordance with the provisions of the Fair Labor Standards Act.

If it appears that the plaintiffs have performed some work for which they have not been properly paid, the Court cannot deny recovery merely because the amount due is not capable of mathematical ascertainment. Wirtz v. Turner, 7 Cir., 330 F.2d 11. In such an instance where the evidence shows that the plaintiffs have worked some hours for which they were not properly compensated, an award must be made based upon estimates, opinions, and reasonable inferences to be drawn from the evidence and testimony available. O'Meara-Sterling v. Mitchell, 5 Cir., 299 F.2d 401; Mitchell v. Williams, D.C., 211 F.Supp. 860. The employer cannot be heard to complain that the claim lacks exactness of measurement when the lack of exactness is due in whole or in part to his own failure to keep the records that would have made exactness of measurement possible. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. While the plaintiffs have the burden of proving their claim for unpaid wages, they are deemed to have carried this burden if they prove that they have in fact performed work for which they were not properly paid, and if they have produced sufficient evidence to show a reasonable approximation of the amount due as a matter of just and reasonable inference. The burden then shifts to the defendant to come forward with evidence to negative the reasonableness of the inferences to be drawn from the employees' evidence. Mitchell v. Williams, supra.

With these principles in mind, we must look at the specific claims made by these plaintiffs. According to the testimony of Ben Foster, for the 43 weeks between December 1, 1963 and September 20, 1964, he worked from 12:00 o'clock noon to 2:00 p. m., and from 4:00 p. m. to 6:00 p. m., and from 8:30 p. m. until midnight each day, six days per week. If this is so, he worked 7½ hours per day, or 45 hours per week. In addition to this, he testified that he worked overtime every day ranging from 20 minutes to 2 hours per day. It was his testimony that this overtime was caused by trains being late, truck breakdowns, and other such happenings. His testimony in this regard was somewhat corroborated by other witnesses, and the defendant had no actual proof to the contrary. The defendant, Willie Irwin, and his wife did testify that they did not believe that he worked that much overtime but relied mainly on the fact that the overtime had not been reported. The defendant testified that his employees were instructed to report all overtime work and that they would be paid accordingly. The plaintiff, Ben Foster, admitted that he did not report his overtime, but insists that he did perform this overtime work each day. The Court believes that a fair inference to be drawn from this testimony is that the plaintiff, Ben Foster, did work an average of one hour per day overtime, for which he should have been paid. Thus, for the 43 weeks involved, he worked 8½ hours per day, or 51 hours per week. Under the Fair Labor Standards Act he was entitled to be paid, during the period involved, for 1,720 hours at $1.25 per hour, and for 473 hours overtime at $1.87½ per hour, making a total of $3,036.88. The evidence shows that in fact, for the period involved, he was paid a total of $3,007.78. Thus he was underpaid a total of $29.10.

Ephraim McHugh testified that between December 1, 1963 and March 1, 1964, he worked from 10:15 p. m. to 7:00 a. m. each day, six days per week. If so, he worked 8¾ hours per day, or 52½ hours per week during that time. On March 1, 1964 his schedule was changed, and from that date through September 30, 1964 he claims to have worked from 10:30 p. m. to 7:00 a. m., or 8½ hours per day, or 51 hours per week. Defendant has failed to rebut

this testimony. Thus, for the 43 weeks involved, McHugh should have been paid for 1,720 hours at $1.25 per hour, plus overtime for 491½ hours at $1.87½ per hour, or a total of $3,071.56. This plaintiff also claims to have worked an additional 25 hours overtime during the Christmas season, but his evidence does not preponderate in this regard. The Court does not believe he has proved this overtime. The evidence shows that McHugh was actually paid a total of $2,797.73 during the period involved, resulting in a total underpayment to this plaintiff of $273.83.

The plaintiff, Samson Foster, claims to have worked from 11:00 p. m. to 6:00 a. m. each day, six days per week. If so, he worked 7 hours per day, or 42 hours per week. His testimony was not contradicted, and as a matter of fact, he was not even cross-examined by defendant's counsel. Thus, the Court must conclude that he should have been paid for 1,720 hours at $1.25 per hour, plus 86 hours overtime at $1.87½ per hour, or a total of $2,311.25. The evidence shows that he was actually paid a total of $2,-173.76, and that he was therefore underpaid a total of $137.49.

And lastly, the plaintiff, Sidney De-Jean, claims to have worked from 11:00 p. m. to 7:00 a. m. each day, six days per week, or a total of 8 hours per day, or 48 hours per week. The testimony of this witness, in this regard, was not rebutted and he also was not cross-examined by defendant's counsel. Thus he should have been paid for 1,720 hours at $1.25 per hour, plus 344 hours overtime at $1.87½ per hour, or a total of $2,-795.00. This plaintiff also claims to have worked 25 additional hours overtime during the Christmas season, but the Court concludes that he has not carried the required burden of proving this overtime. The evidence shows that he was actually paid a total of $2,656.91, resulting in an underpayment of $138.09.

While the plaintiffs have sued for liquidated damages in addition to unpaid wages, and while the Fair Labor Standards Act does provide for such damages, 29 U.S.C.A. § 216(b), nevertheless, whether or not such liquidated damages should be awarded lies within the sound discretion of the Court. Brown v. Dunbar and Sullivan Dredging Co., 2 Cir., 189 F.2d 871. Clougherty v. James Vernor Co., 6 Cir., 187 F.2d 288, cert. den. 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616. The small underpayments found to exist in this case were certainly not a result of bad faith, malice or oppression on the part of the defendant. As a matter of fact, this Court is of the opinion that if proper time records had been kept, the defendant might well have been able to prove that the plaintiffs were not, in fact, underpaid at all. It is significant to note that all four plaintiffs testified that after the investigation by the Labor Department, and after the defendant installed time clocks, and after the defendant began paying them in strict compliance with the act, they actually received less money per month than they had previously received. It is also significant to note that each of the plaintiffs testified that they did not, in fact, at any time report overtime to the defendant in spite of the fact that the defendant had told them that if and when overtime was reported it would be paid. But in view of the fact that the defendant was unable to refute, by adequate records or other testimony, the claims of the plaintiffs that they had, in fact, worked some overtime for which they had not been paid, the Court is compelled to make the awards as calculated above. But the Court is not compelled to award liquidated damages. Indeed, in this case it would be most unjust to do so.

But with regard to plaintiffs' claim for reasonable attorney fees, the law is apparently different. The section respecting award of attorney fees to the employees' attorney has been held to be mandatory and unconditional. Wright v. Carrigg, 4 Cir., 275 F.2d 448. The amount of the fee to be awarded is left to the sound discretion of the Court. Stilwell v. Hertz Drivurself Stations, 3 Cir., 174 F.2d 714. The suit filed herein by the attorney for these four plaintiffs

was not a complicated matter, nor was the preparation for trial or the actual trial itself a time consuming matter. Considering the nature of the services rendered, and the amounts recovered, the sum of $150 would be considered an adequate attorney fee for handling this suit involving the claims of the four plaintiffs.

Thus, in accordance herewith, judgment will be entered against the defendant, Willie Irwin, d/b/a Irwin Truck Line, and in favor of (1) Ben Foster in the sum of $29.10; (2) Ephraim McHugh in the sum of $273.83; (3) Samson Foster in the sum of $137.49; and (4) Sidney DeJean in the sum of $138.09. Judgment will also be rendered against the defendant condemning him to pay to the plaintiffs jointly the sum of $150.00 as attorney fees.