Marion WHITE, Plaintiff,

v.

BECKMAN DAIRY COMPANY, Defendant.

Civ. A. No. FS–72–C–13.

United States District Court, W. D. Arkansas, Fort Smith Division.

Jan. 18, 1973.

Fines F. Batchelor, Jr. (Batchelor & Batchelor), Van Buren, Ark., for plaintiff.

S. Walton Maurras (Harper, Young & Smith), Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

PAUL X. WILLIAMS, District Judge.

The defendant, Beckman Dairy Company, is a family owned dairy corporation engaged in interstate commerce and admittedly covered by the Fair Labor Standards Act 29 U.S.C. § 201 et seq.

The plaintiff, Marion White, was an employee of Beckman during the interval from March 13, 1970 through April 23, 1971, the period involved in this action.

Mr. White had been employed by Beckman for a number of years prior to March 13, 1970 and was the Plant Manager for Beckman during the entire period of his employment. Apparently he was pleased with his relationship with Beckman until after Mrs. Jim Beckman assumed active control of the family corporation, when she made Tom Biggs, a comparatively young man, the active business manager and superintendent of Beckman Dairy. When that occurred, friction developed which led to the firing of Mr. White on April 23, 1971.

At the time of leaving Beckman's employ Mr. White was paid all monies he claimed to be due him, including vacation pay and severance pay. He voiced no claim of any kind until March 10, 1972 when he commenced this action alleging that Beckman owes him $1,236.-00 as back wages and seeking in addition penalty and attorney fees.

The defendant, Beckman, admits the employment of Mr. White as Plant Manager and pleads that White was an "executive" and exempt under 29 U.S.C. § 213(a)(1) as defined by 29 C.F.R. 541.

The evidence is in conflict. White contends that he worked an average of 61.25 hours per week and testified with some degree of specificity concerning the actual hours worked in a typical week. He was not required to punch the time clock, but ordinarily he punched it for an "in" time. On no occasion did he ever punch "out". He was his own boss. He had an office and a telephone and most of the time a truck for his personal travel.

The plaintiff has summarized the testimony of the defendant's witnesses as follows:

*Tom Biggs testified in substance:* I was employed by Beckman as General

Manager in 1969, and while I had not had previous experience in operating a dairy, I had a degree in Industrial Engineering and had had a year experience at Whirlpool. White was Plant Manager when I was employed, and continued in such capacity until I let him go. As Plant Manager, White supervised the hourly plant employees, and after Reeves was employed as foreman, supervised him. White could not hire or fire, but did some interviewing of prospective employees and made recommendations to me, although applications for employment were obtained in the office. With reference to firing, I could not even fire, except for cause set out in the contract, although White could recommend that a slip be given to employees, although I do not remember any being requested. White was required to determine production to be done by the plant, do the ordering of items to be used, could move persons around in the plant from one job to another, within limitations of the contract. To the best of my knowledge, White had all of the men he needed to run the plant. Often when I would go into the plant in the early part of the afternoon, I would not see White there. Defendant's Exhibit "2B" is an organizational chart of Beckman, and reflects that White is the Plant Manager and as such answers to the General Manager.

Defendant's Exhibit "C" is a packet of invoices of Interstate Electric Co. for repairs made by them for Beckman. Defendant's Exhibit "D" is a list of the number of employees supervised by White, by the week during the period in question. Defendant's Exhibit "E" is a copy of the union contract of Beckman. Defendant's Exhibit "F" is a table of the average number of hours worked, per week, during the period by the Plant Hourly Employees, and includes both full time employees and part time employees.

During the period in question here, the plant was actually in operation 4 days per week, Monday, Tuesday, Thursday and Friday, although plaintiff and a few others worked six days per week. White was not required to punch in and out, as hours were not used in figuring his pay, but he was paid a flat weekly salary of $164.15 and furnished an automobile with a value of $10 per week, until approximately six weeks before his discharge, and then the automobile was taken and the salary increased to $174.-15 per week.

*Reeves testified in substance:*

I am presently the Plant Manager of Beckman, had worked as a machine operator at Acee Milk Co., for six years, then worked for several years at the Mulberry Lumber Company, coming to Beckman as Foreman under White. I believe I was employed by Beckman the latter part of July, 1970, and worked for about a month as a relief driver, and around the 1st of September, 1970, started working as foreman under White, where I continued until I replaced him as Plant Manager.

I do not know what White did before I started working under him, and do not know what he was doing when I was not with him, but after going to work under him, did fill in for one man when he was on vacation. I would estimate that White would spend approximately 20% of his time at manual labor, from 18% to 22% would, I believe be the extremes. I would ordinarily get to work around 7:00 A.M., and do not know what White would do before I arrived. Occasionally, White would permit me to leave work around noon. I was paid a flat salary instead of by the hour, but did punch in and out until I became Plant Manager, and do not now punch in or out. White would often leave the plant by 1:00 to 2:00 P.M. while I was there. On Wednesdays, White would work on equipment for approximately 4 hours, as we did most of our maintenance on that date since the plant was closed.

The plant was working 4 days per week and on Wednesday and Saturday when the plant was closed we could do maintenance and other things needed, but on Saturday, we would try to get finished as soon as possible and go home, and would finish around noon.

*Taft testified in substance as follows:*

I have been with Beckman for 12 years and am Maintenance Helper. While White was at the plant, he was the Maintenance Man and I was his helper. I did maintenance work outside the plant, in the yard, and also did some work in Mrs. Beckman's yard. I was at the plant 6 days a week, and inside about half the time. I didn't see White operate any of the machines, and I would sometimes relieve some of the dock workers who would finish around 1:30 to 2:30 P.M.

I would ordinarily get to work around 7:30 A.M., and most of the work I did for Mrs. Beckman would be in the afternoon. I do not understand how the plant workers could come to work at 7:00 A.M. and leave at 1:30 to 2:30 P. M. and be working an average of 8 to 10 hours per day.

On Wednesday, White would not work more than two hours on equipment.

I do not know what White would be *doing when I was not in the plant.*

*In addition, we have the evidence of Mr. William R. Turner,* Compliance Officer for the Wage and Hour Enforcement, Department of Labor, who testified that he had made an investigation; had given the results to Beckman, but that his department had not taken any action.

From this conflicting evidence the Court is asked to determine whether or not White was an "executive" and if not, to determine what work he did that would entitle him to "back wages".

Title 29, Part 541 of the Code of Federal Regulations, being the Regulations and Interpretations of the United States Department of Labor governs the interpretation of the exemption provided by 29 U.S.C.A. § 213(a)(1) concerning the definition of the "executive" exemption.

The plaintiff is exempt from the coverage of the Act if he falls within the "executive" definition of the applicable regulations and statutes, in that:

A. His primary duty consisted of the management of a customarily recognized department; and

B. He customarily and regularly directed the work of two or more other employees; and

C. He had the authority to hire or fire other employees under his supervision or at least his suggestions concerning the hiring and firing of hourly employees was given particular weight by the general manager; and

D. He customarily and regularly exercised discretionary power; and

E. He did not devote more than 20% of his hours of work in the work week to activities which were not directly and closely related to the performance of the work described in Paragraphs A through D above; and

F. His rate of pay was in excess of $125.00 per week, exclusive of board, lodging or other facilities; and

G. He was compensated at least weekly on a salary basis for a predetermined amount which was not subject to reduction because of variation in the quality or quantity of work performed during the week and without regard to the number of days or hours worked. George Lawley and Son Corp. v. South, 1 Cir., 140 F.2d 439, cert. denied, 322 U.S. 746, 64 S.Ct. 1156, 88 L.Ed. 1578.

We note that these 6 tests are placed on the requirement for exemption, all being tied together by an "and".

The burden is on plaintiff to prove by a preponderance of the evidence, first the number of hours which he actually worked and, second the amount of wages due him for the work performed. The evidence to sustain this burden must be definite and certain. Johnson et al. v. Dierks Lumber and Coal Company, 130 F.2d 115 (8 Cir. 1942). Although the Act is to be construed liberally for a claimant the requirements of the foregoing rule cannot be disregarded or lessened.

In Retail Store Employees Union v. Drug Fair Community Drug, 307 F. Supp. 473 (USDS Dist. of Columbia 1969) the court stated:

"Plaintiffs have the burden of proof as to all elements of their claim for relief. They must prove that there

exists an employee-employer relationship; that there was engagement in activities within the coverage of the Act; that the employer violated the wage requirements; and that a definite amount of compensation is due."

In applying the test to determine whether or not the evidence produced by the plaintiff is definite and certain the plaintiff's credibility is an issue. In Hoff et al. v. North American Aviation, Inc., 67 F.Supp. 375 (N.D.Texas 1946) in rejecting a claimant's proof concerning the amount of non-exempt work which the plaintiff performed in excess of the 20% limitation under the executive exception the Court said:

> "Each of them was deeply interested in the outcome of the cause. The witnesses who did not agree and who testified otherwise, were all disinterested . . ."

Here, although the plaintiff initially testified concerning the number of hours worked; on cross-examination his "estimates" were shown to vary substantially and were in conflict with the testimony of the present plant manager who testified that he was performing the identical duties. In Anderson v. Federal Cartridge Corp., 62 F.Supp. 775 (D.C. Minn.1945), the Minnesota District Court acknowledged the unreliable nature of evidence produced by claimants several years after they had performed their duties. See also Dumas v. King, 157 F.2d 463 (8 Cir. 1946) which held that a trial court:

> ". . . was not bound to accept King's general testimony, unsupported by extraneous evidence such as records, etc., or by other credible testimony, that throughout the period of his employment he had worked at least 72 hours overtime a week . . ."

The plaintiff's testimony concerning whether or not he worked overtime was countered by the defendant through the testimony of the present plant manager, and there was evidence that during the period complained of the plant did not operate in excess of 40 hours per week at any time.

■ However, the question of whether or not plaintiff falls within the "executive" exemption is purely one of fact to be determined by the trial court. Dumas v. King, supra; Gill et al. v. Mesta Mach. Co., 165 F.2d 785 (3 Cir. 1948).

■ In spite of the conflict in the testimony and the numerical superiority on the defendant's side, we find that White was not exempt because he devoted approximately 22½% of his time to activities that constitute labor as distinguished from "executive" work.

The next question is: How many hours of overtime did White work for which he is entitled to back pay?

Again we note the conflict in the testimony and the numerical superiority of witnesses for the defendant.

■ In spite of that superiority and the complete good faith of the defendant, the Court finds that the plaintiff has met the burden of proof to satisfactorily show that he is entitled to $500.00 in back pay. The good faith of the defendant was evidenced by the fact that at the time the plaintiff was discharged he was paid severance pay and vacation pay. He made no protest and defendant thought this was all that was due to him. During his seven years of employment in this job plaintiff had never complained about his rate of pay.

■■ The plaintiff has sued for liquidated damages in addition to unpaid wages, and the Fair Labor Standards Act does provide for such damages, 29 U.S. C.A. § 216(b). Whether or not such liquidated damages should be awarded lies within the sound discretion of the Court. Clougherty v. James Venor Co., 187 F.2d 288 (6 Cir. 1951), cert. den. 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616; and Foster v. Irwin, 258 F.Supp. 709 (E.D.La. 1966). Therefore, due to the good faith of the defendant the Court is not compelled to make such an award and the plaintiff's claim for liquidated damages is hereby denied.

As the Court stated in Wirtz v. Harrigill, 214 F.Supp. 813 (S.D.Miss.1963), affirmed 328 F.2d 963 (5 Cir. 1964).

"This Fair Labor Standards Act is designed and intended as a shield to protect the unwary and not as a sword on which to impale an unsuspecting employer who is engaged in a business and honestly exercises a reasonable effort in good faith to comply with all the required provisions of such act." 214 F.Supp. at 815.

In the case of Foster v. Irwin, supra, the Court held:

". . . The section respecting award of attorney fees to the employees' attorney has been held to be mandatory and unconditional. Wright v. Carrigg, 4 Cir., 275 F.2d 448. The amount of the fee to be awarded is left to the sound discretion of the Court. Stilwell v. Hertz Drivurself Stations, 3 Cir., 174 F.2d 714."

Accordingly, we find that the plaintiff will be entitled to an attorneys fee of $250.00 and the costs of this case, but due to good faith of defendant, no liquidated damages will be awarded.

Clerk will prepare the order.