**Maureen S. BULLOCK**

v.

**PIZZA HUT, INC. and Pizza Hut of Louisiana, Inc.**

Civ. A. No. 75–176.

United States District Court, M. D. Louisiana.

March 30, 1977.

---

Alexis St. Amant, Baton Rouge, La., for plaintiff.

Victor A. Sachse, III, Charles W. Lamar, Breazeale, Sachse & Wilson, Baton Rouge, La., for defendants.

E. GORDON WEST, District Judge:

Plaintiff brings this suit against her former employers, Pizza Hut of Louisiana, Inc. and Pizza Hut, Inc., invoking the provisions of Title VII of the Civil Rights Act of 1964, Title 42, U.S.C.A. § 2000e, et seq., and the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, Title 29, U.S.C.A. § 201, et seq. In short, it is plaintiff's contention that the defendants in this action discriminated against her on the basis of her sex in violation of those

statutes. Plaintiff originally filed her complaint with the Equal Employment Opportunity Commission (EEOC). There being no resolution of her complaint, the EEOC issued a "right to sue letter" on April 15, 1975. Plaintiff then brought suit in this Court.

Plaintiff's original complaint was based upon what she alleged to be wage discrimination solely because of her sex. Defendants answered denying that plaintiff's sex played a part in the determination of her salary. Subsequent to her filing this suit, plaintiff's employment was terminated by the defendants. At that time plaintiff moved for leave to file a supplemental complaint alleging that the termination of her employment was in retaliation for her bringing this suit. The motion was granted and after the supplemental complaint was filed the defendants answered, denying that plaintiff's firing was in retaliation for this suit and alleging that plaintiff's termination was for good cause.

It was in this posture that the case went to trial on October 29, 1976. At the conclusion of the trial, judgment for the defendants was entered insofar as plaintiff's claim for retaliatory firing was concerned. Oral reasons were assigned at that time, and we here reiterate that although we felt that plaintiff established a *prima facie* case, it was not established by a preponderance of the evidence that plaintiff's firing was based upon her prosecution of this suit rather than for "good cause" based upon real disagreements between the parties, in no way related to plaintiff's sex. Because of the complexity of the question of whether plaintiff was the victim of unlawful wage discrimination based upon sex, judgment on that issue was reserved until we could examine in detail the many exhibits introduced at trial. We now find that plaintiff was discriminated against on the basis of her sex insofar as her salary was concerned, but only until May 1, 1974, when her salary was raised to a figure commensurate with male employees performing the same or similar duties.

We have considered the record established in this case and make the following findings of fact and conclusions of law. Plaintiff's suit is based primarily on the prohibition against sexual discrimination of Title VII of the Civil Rights Act of 1964, Title 42, U.S.C.A. § 2000e, et seq., and the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, Title 29, U.S.C.A. § 201, et seq. Concerning these two provisions, it has been held that:

"(a)lthough the Civil Rights Act is much broader than the Equal Pay Act, its provisions regarding discrimination based on sex are *in pari materia* with the Equal Pay Act. This is recognized in the provision of section 703(h) of the Civil Rights Act (42 U.S.C. § 2000e–2(h)) that an employer's discrimination upon the basis of sex shall not be an unlawful employment practice under the Civil Rights Act if the differentiation is authorized by the Equal Pay Act. Since both statutes serve the same fundamental purpose against discrimination based on sex, the Equal Pay Act may not be construed in a manner which by virtue of section 703(h) would undermine the Civil Rights Act." *Shultz v. Wheaton Glass Co.,* 421 F.2d 259 (3rd Cir. 1970); See also Kanowitz, Leo. *Sex Based Discrimination in American Law III: Title VII of the 1964 Civil Rights Act and the Equal Pay Act of 1963,* 20 Hastings Law Journal 305 (1968).

Accordingly, the two above cited provisions are discussed together for the purposes of this opinion.

Section 3 of the Equal Pay Act of 1963, which amended Section 6 of the Fair Labor Standards Act of 1938, Title 29, U.S.C.A. § 206(d)(1), provides in pertinent part:

"(n)o employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to such employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work the performance of which re-

quires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to . . . a differential based on any other factor than sex."

In seeking to come within the terms of this provision, plaintiff proved that she was first employed by the defendants on or about February 15, 1973 as a Manager/Trainee of a Pizza Hut Unit in Baton Rouge, Louisiana. At that time plaintiff was paid a monthly salary of $450.00. It appears to be uncontroverted that this was the prevailing salary in the Pizza Hut Organization for the Manager/Trainee position at that time. Charles Naquin, a male Manager/Trainee hired at the same time as plaintiff, also received this salary. Plaintiff remained as a Manager/Trainee for approximately one month, after which time she was promoted to the position of Pizza Hut Unit Manager. Her salary was raised to $300.00 per two week pay period or $600.00 per month beginning with the pay period commencing on March 15, 1973. It appears from the record that Charles Naquin, the male Manager/Trainee, was also promoted to Unit Manager at the same time, but his salary was raised to $375.00 per pay period or $750.00 per month.

Plaintiff testified that two other managers, Clyde Martin and Paul Grace, were hired by the defendants at that time for a higher salary than she was then receiving. But according to the application which Martin filled out when seeking employment with defendants, he was hired on October 10, 1972 at a salary of $600.00 per month. His salary five months later, at the time plaintiff was hired, was $425.00 per pay period or $850.00 per month. Paul Grace did start at approximately the same time as plaintiff. His starting salary was $450.00 per pay period or $900.00 per month. At all times relevant to this opinion, the salaries of both Martin and Grace remained at these levels.

Plaintiff continued to work for defendants in her capacity as a Pizza Hut Unit Manager at a salary of $600.00 per month until June 15, 1973. At that time her salary was raised to $720.00 per month. At the same time, Charles Naquin, the male Unit Manager who was hired at the same time as plaintiff, had his salary increased from $750.00 per month to $800.00 per month. There is no indication in the record as to what factors prompted these raises. Naquin's salary remained at this level throughout the remainder of his employment with Pizza Hut. Plaintiff and Frank Williams, another manager, received a merit increase in salary to $400.00 per pay period or $800.00 per month, on May 1, 1974. This increase was pursuant to a plan by the defendants to standardize the salaries of all Pizza Hut Unit Managers in anticipation of instituting a Management Incentive Program. Since Paul Grace, who was making $900.00 per month, terminated his employment in May of 1974, all but one of the defendants' Unit Managers were making the same monthly base salary after the standardization plan was implemented. The lone exception was Clyde Martin. As his salary was $850.00 per month prior to the institution of this plan, it was not decreased, but remained at this higher level.

One other factor had a direct effect on plaintiff's salary during this time. In securing her employment with the defendants, plaintiff had utilized the services of Snelling and Snelling Personnel, an employment agency. The reimbursement of the fee that this agency charged plaintiff was a negotiable item and was considered in determining plaintiff's salary. No other manager employed by the defendants in the Baton Rouge area received reimbursement for an employment agency fee during the term of plaintiff's employment. Plaintiff received two such payments: the first on August 15, 1973 and the second on March 13, 1974. Both of these payments were for $252.00 and this $504.00 total must be considered in assessing plaintiff's claim.

Both sides have presented charts and statistical data pertaining to salaries and bonuses paid to various employees, and the Court has carefully studied and weighed this evidence. That evidence

shows that at all times prior to the standardization of wages on May 1, 1974, plaintiff was always the lowest paid Unit Manager in the Baton Rouge area. Even considering the reimbursement of the fee that plaintiff paid to the employment agency that secured her job, the facts show that during this period she earned an average salary of $735.10 per month while the average salary for all male Unit Managers during this period was $834.52 per month. When the fact that plaintiff was the only female manager in defendants' organization at this time, plus the fact that it is uncontroverted that plaintiff's unit was always ranked among the highest in profitability is added to this statistical evidence, we conclude that wage discrimination has been proved.

Plaintiff was hired by the defendants on or about February 15, 1973 as a Manager/Trainee. She was promoted to the position of Unit Manager approximately one month later by Gerald York, defendants' Area General Manager. York also determined plaintiff's starting salary as a Unit Manager. It was his testimony at the trial that the factors he considered in determining a Unit Manager's salary were experience and ability in handling the general public, education, training, the nature of the manager's prior experience, and the nature of the economy in respect to the supply and demand for qualified managers. However, he could not recall the extent of education of any of his former Unit Managers when questioned on the subject. He was issued no guidelines, but was expected to hold the cost of labor down while at the same time acquiring competent help. There is testimony in the record concerning Mr. York's preference for male Unit Managers. Frank Coates, a former Unit Manager for defendants during York's term as Area General Manager, testified that York stated to him that in his opinion a woman should not be in the position of Unit Manager nor should a woman be earning as much money as plaintiff was making. This testimony was corroborated by Clyde Martin, another former Unit Manager, who stated that York had also made the comment that

it was regrettable that plaintiff was doing such a good job because she was a woman, and he preferred male Unit Managers. When York was questioned about these statements he neither admitted or denied making them. His answer was that it was possible that he had made such statements, but he could not recall ever doing so. The testimony strongly suggests that such statements were in fact made by Mr. York even though he did at one time attempt unsuccessfully to obtain a merit increase for her.

There was testimony at the trial that the employee records that defendants were required to keep by the EEOC were altered when they were unfavorable. Linda Coates, a former employee of the defendants, testified that she had been told by Janice Hurst, her superior, that the figures on the EEOC reports were to be changed whenever they proved to be unfavorable. As Linda Coates only worked for the defendants for a period of approximately six weeks, she was told merely to copy the figures from the old reports. This testimony substantially corroborated that of the plaintiff, who testified that Janice Hurst told her that the EEOC records that the Unit Managers were required to keep were to be altered if they did not meet EEOC standards. This testimony went unchallenged, and indicates, at the very least, a measure of bad faith on the part of defendants.

It is clear that the question of whether an employer has engaged in unlawful discriminatory practices is essentially a question of fact to be resolved on a case-by-case basis. *Bradford v. Sloan Paper Co.,* 383 F.Supp. 1157 (N.D.Ala.1974); *Causey v. Ford Motor Co.,* 382 F.Supp. 1221 (M.D.Fla.1974); *Frockt v. Olin Corp.,* 344 F.Supp. 369 (S.D.Ind.1972). It is also clear that an employer cannot claim that his wage differential is based on "any other factor other than sex" if the plaintiff's sex is wholly or partially a motivating factor. Only if sex plays no part in the plaintiff's salary does the differential fall beyond the reach of the law. *Hodgson v. Robert Hall*

*Clothes, Inc.*, 326 F.Supp. 1264 (D.Del.1971), rev. in part on other grounds, 3 Cir., 473 F.2d 589, cert. denied, 414 U.S. 866, 94 S.Ct. 50, 38 L.Ed.2d 85. See also 29 C.F.R. § 800.142. We think that the plaintiff's sex was more than just a contributing factor in determining her wages.

▬ Defendant argues that the higher salaries paid to the male Unit Managers were based upon characteristics which these men possessed that made them more valuable as managers. With one exception, we do not agree. The defendants established that Paul Grace had seven years experience in Florida and Texas as a Pizza Hut Unit Manager and Area General Manager. He was also personally known to Gerald York, defendants' Area General Manager for Baton Rouge. We think that these facts justified the wage differential between plaintiff and Grace. As to the other two managers in the Baton Rouge area, defendants argue that Clyde Martin's higher salary was based upon his three years of college education and extensive experience in dealing with the public. However, we note that plaintiff's application for employment with defendants shows she had at least as much experience in dealing with the public as did Martin, having occupied positions as either manager or manager trainee in other food service establishments at least as far back as 1965. Furthermore, while not discounting the value of a college education, we do not believe it justifies the wage differential in this instance. As plaintiff states in her brief, there was no showing that a college education was a pre-requisite to employment as a Unit Manager or that defendants derived any great benefit from a manager having these qualifications. The Wage and Hour Division of the Department of Labor, which is charged with administering the Fair Labor Standards Act, has established that the

"(p)ossession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill." 29 C.F.R. 800.-125.

While we might have found the evidence of a broader educational background as justifying a disparity in wages during an initial period of employment, we think that in light of plaintiff's repeated high performance in profitability it cannot provide justification for her wage differential during the entire period prior to the standardization of wages. We derive support for this position from the fact that Charles Naquin, the manager who was hired at almost exactly the same time as plaintiff, at all times prior to the standardization of wages earned as much as $150.00 per month more than plaintiff. No justification is offered for this other than defendants' assertion that this disparity was due to Gerald York's personal assessment of Naquin's worth as a manager. We have previously discussed the factors that York used in evaluating the salaries of potential employees. We can see no justification for the difference in salaries other than the plaintiff's gender. The defendant argues that plaintiff's sex was important only to the extent that it played a part in her performance. It is argued that plaintiff's gender was a valid consideration because of cultural distinctions which would inhibit the plaintiff's development in learning leadership qualities and mechanical skills. A short answer to this contention is that this was not shown to be the case here. Defendants' stereotyping plaintiff in this manner is merely a round-about way of saying that the plaintiff is being paid less because in our society women are willing to work for less. This is clearly an inappropriate factor under the law. *Brennan v. Prince William Hospital Corp.*, 503 F.2d 282 (4th Cir. 1974); *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719 (5th Cir. 1970).

▬ The Court concludes that there was a wage discrimination against the plaintiff based entirely upon sex, from the time of her promotion to Unit Manager on March 15, 1973 until May 1, 1974. At that time, defendants standardized all but one of the salaries of Baton Rouge area Unit Managers. Plaintiff was therefore making the same base salary as the majority of defendants' managers. Plaintiff argues however

that the defendants' Management Incentive Program also worked against her in a discriminatory manner. We cannot agree. That program provided for managers receiving a bonus based upon their quarterly profit/loss statement. During this time plaintiff always ranked among the highest paid of defendants' Unit Managers. The payroll records show that the total of her base salary and her bonus was at all times higher than the total base salary and bonus of Clyde Martin, the only manager with a higher base salary than hers. There is simply no evidence that this program in any way discriminated against her because of her sex.

▮▮▮▮ Having found that plaintiff was the victim of wage discrimination during the period of her employment from March 15, 1973 to May 1, 1974, the Court must now turn to the computation of the appropriate damages to award. For the purpose of enforcement and administration of the Equal Pay Act, any amounts owing to the employee which were withheld by the employer in violation of that Act are considered the same as unpaid minimum wages or overtime compensation. Title 29, U.S.C.A. § 206(d)(3). Plaintiff has submitted various charts which she claims show that the defendants' actions have resulted in damages in the amount of $3,172.50. However, this figure is based on computations that include wages after May 1, 1974. Having found that the discriminatory practices that the defendants engaged in ceased on May 1, 1974, only wages paid prior to that date may be considered in determining plaintiff's damages. Furthermore, as we found that the salary of Paul Grace was set independently of any considerations of sex, and since he performed the duties of Assistant Area General Manager, it would not be proper to consider his salary in arriving at the proper award. Also, the figure that plaintiff suggests does not include a credit to the defendants for their reimbursement of the fee which she paid to the employment agency she used in securing her job.

Defendants have also submitted to the Court what they felt were appropriate dam-ages should we find that plaintiff's rate of pay was unlawful. The total amount that the defendants claim is owed equals $638.38. However, we also find fault with these figures as they are computed using only the salary of Charles Naquin to determine what amount is owed to plaintiff. As Clyde Martin had been employed only approximately five months at the time plaintiff was hired, we feel that any award of damages must reflect his salary. Therefore, we have taken the average of the sums of the salaries of Martin and Naquin for the twenty-seven pay periods plaintiff worked prior to May 1, 1974 and subtracted the total salary that plaintiff made over the same period. From the difference in these two figures we have subtracted $504.00 to credit defendants for their reimbursement of the fee plaintiff paid to her employment agency. Using these figures, we arrive at a total of $1,006.00 owed to plaintiff as unpaid wages. In *Foster v. Irwin,* 258 F.Supp. 709 (E.D.La.1966), we said:

> "(i)f it appears that the plaintiffs have performed some work for which they have not been properly paid, the Court cannot deny recovery merely because the amount is not capable of mathematical ascertainment. *Wirtz v. Turner,* 7 Cir., 330 F.2d 11." *Foster v. Irwin,* 258 F.Supp. 709 (E.D.La.1966).

In accordance with that holding, we believe that applying these averages will best serve the ends of justice in this case.

▮▮▮▮ Plaintiff also demands liquidated damages from the defendants under the provisions of Title 29, U.S.C.A. § 216(b). It has been held that the award of these damages is within the sound discretion of the district court. *White v. Beckman Dairy Co.,* 352 F.Supp. 1266 (W.D.Ark.1973); *Foster v. Irwin, supra.* The courts have refused to exercise their discretion in awarding liquidated damages under this provision when it was found that the defendant's failure to comply with the requirements of the Fair Labor Standards Act has been in good faith. *White v. Beckman Dairy Co., supra; Clougherty v. James Vernor Co.,* 187 F.2d 288 (6th Cir. 1951). The facts of the

432

instant case preclude such a finding. We have concluded that the wage discrimination in this case was deliberate. Under the authority granted this Court under Section 16(b) of the Fair Labor Standards Act of 1938, Title 29, U.S.C.A. § 216(b), we award the plaintiff $1,006.00 in liquidated damages.

Plaintiff's demand that the defendants be cast for reasonable attorneys fees under Title 29, U.S.C.A. § 216(b) must be treated somewhat differently. This is because:

> "(t)he section respecting attorneys fees to the employee's attorney (under the Fair Labor Standards Act) has been held to be mandatory and unconditional. *Wright v. Carrigg,* 4 Cir., 275 F.2d 448. The amount of the fee is left to the sound discretion of the Court. *Stilwell v. Hertz Drivurself Stations,* 3 Cir., 174 F.2d 714." *Foster v. Irwin,* supra; *White v. Beckman Dairy Co.,* supra; *Retail Store Employees Union, Local 400 v. Drug Fair-Community Drug Co.,* 307 F.Supp. 473 (D.D.C.1969).

While there was no specific evidence introduced pertaining to the value of legal services rendered, the Court has considered the work involved as reflected by the record, the nature of the case, the amount of money involved and the success of counsel's efforts and concludes that a fee of $1,000.00 would be just and equitable in this case.

For the foregoing reasons, we find for the plaintiff in the amount of $2,012.00, plus an attorney fee in the amount of $1,000.00. Judgment will be entered accordingly.