757 So.2d 1034 (2000)
Robert K. HILLIER and Orthopaedic Center of the Coast, Inc., Appellants,
v.
Ina MINAS and Teresa Guest, Appellees.
No. 1998-CA-01162-COA.
Court of Appeals of Mississippi.
March 21, 2000.
*1035 Sanford R. Steckler, Biloxi, John F. Ketcherside, Bay St. Louis, Carl Souser, Gulfport, Attorneys for Appellants.
Wynn E. Clark, Gulfport, David C. Goff, Jackson, Attorneys for Appellees.
EN BANC.
IRVING, J., for the Court.
¶ 1. Ina Peggy Minas and Teresa Guest sued Robert K. Hillier and the Orthopaedic Center of the Coast, Inc. (the Center) in the Circuit Court of Hancock County for: (1) unpaid overtime compensation under the Fair Labor Standards Act (FLSA), (2) breach of contract, (3) defamation of character and (4) intentional infliction of emotional distress. However, the defamation of character claim was withdrawn by Minas and Guest before the trial commenced. The jury returned a verdict in favor of Minas and Guest on their breach of contract and FLSA claims and in favor of Dr. Hillier and the Center on the intentional infliction of emotional distress claim. On a special verdict form, the jury awarded both Minas and Guest $1,200 on their breach of contract claim, $4,701.23 and *1036 $4,311.82, respectively, on their FLSA claims.
¶ 2. The trial court entered judgment for Minas and Guest for the amounts awarded them by the jury and added $4,701.23 and $4,311.82, respectively, as liquidated damages on their FLSA claim, plus attorney's fees in the amount of $28,689.97. Aggrieved, Dr. Hillier and the Orthopaedic Center of the Coast, Inc. now appeal and raise the following issues which are taken verbatim from their statement of the issues:
I. COMMITTED REVERSIBLE ERROR WHEN IT DENIED APPELLANTS' REQUEST FOR THE DEPOSITION OF APPELLANTS' MATERIAL WITNESS THAT WAS NECESSARY TO PRESERVE HER TESTIMONY DUE TO HER UNAVAILABILITY AT THE TIME AND WHOSE TESTIMONY WOULD SHOW THAT THE APPELLEES WERE IN FACT PROFESSIONS UNDER THE FAIR LABOR STANDARDS ACT AND, THEREFORE, EXEMPT FROM THE FAIR LABOR STANDARDS ACT.
II. COMMITTED REVERSIBLE ERROR WHEN IT PRESENTED JURY INSTRUCTIONS AND A SPECIAL VERDICT FORM TO THE JURY OVER THE OBJECTION OF THE APPELLANTS WHICH THE APPELLANTS CONTEND WERE INACCURATE STATEMENTS OF THE LAW, WERE MISLEADING, WERE IMPROPER IN FORM, WERE CONFUSING AND FAILED TO SET FORTH A PROPER STANDARD FOR THE JURY TO FOLLOW IN DETERMINING WHETHER THE APPELLANTS ACTED PROPERLY IN THE ALLEGED VIOLATION OF THE FAIR LABOR STANDARDS ACT.
III. COMMITTED REVERSIBLE ERROR IN GRANTING ATTORNEY'S FEES OVER THE OBJECTION OF THE APPELLANTS WHICH THE APPELLANTS CONTEND WERE UNREASONABLY HIGH; AND THAT FEES INCLUDED HOURS SPENT ON MATTERS FOR WHICH ATTORNEY'S FEES MAY NOT BE AWARDED; AND THAT FEES WERE AWARDED WITHOUT DOCUMENTATION ESTABLISHING WITH SPECIFICITY THE ACTUAL HOURS SPENT ON FAIR LABOR STANDARDS ACT CLAIM, WHICH WAS THE ONLY ONE OF THE APPELLEES' FIVE (5) THEORIES OF RECOVERY FOR WHICH FEES MAY BE AWARDED.
IV. COMMITTED REVERSIBLE ERROR WHEN IT AWARDED LIQUIDATED DAMAGES TO THE APPELLEES OVER THE OBJECTION OF THE APPELLANTS THAT THE JURY INSTRUCTION REGARDING LIQUIDATION DAMAGES, WAS ABSTRACT, CONFUSING, AND MISLEADING TO THE JURY; THAT THE APPELLANTS WERE NOT ALLOWED TO POLL THE JURY TO DETERMINE WHETHER THE JURY HAD AWARDED LIQUIDATED DAMAGES; AND THAT WHEN THE JURY REQUESTED MORE INFORMATION REGARDING WHO MAY AWARD LIQUIDATED DAMAGES, THE TRIAL COURT INFORMED THE JURY THEY HAD ALL THE *1037 LAW NECESSARY TO RENDER A VERDICT.
V. COMMITTED REVERSIBLE ERROR WHEN IT DENIED APPELLANTS' NOTICES OF DEPOSITIONS APPELLEES' MATERIAL WITNESSES WITH A MONTH REMAINING BEFORE TRIAL.
Finding that the trial judge erred in awarding liquidated damages in light of the instruction given on liquidated damages, we reverse on this issue but affirm the trial judge on all other issues.

FACTS
¶ 3. Ina Minas and Teresa Guest are licensed practical nurses. Minas began working for Dr. Hillier on March 15, 1996, and her last day of employment with him was April 15, 1997. Guest began working for him on March 25, 1996, and her last day of employment was April 17, 1997. Both were initially paid at a rate of $10 an hour. In June of 1996, they received a raise to $16.15 an hour. The raise came as result of an agreement which allowed Minas and Guest to maintain their current duties and to assume the additional duties of the office manager, with the office manager's salary being divided between them. Both Minas and Guest also testified that when they were hired, they agreed to accept a Blue Cross/Blue Shield policy with a $1,000 deductible in order for Dr. Hillier to obtain a lower premium. In exchange for this agreement, according to Minas and Guest, Dr. Hillier would escrow $100 a month for both Guest and Minas and would pay the accumulated amount to them at the end of the year. They never received this money. Dr. Hillier, on the other hand, testified that Guest and Minas voluntarily opted not to take the savings plan.
¶ 4. Both Minas and Guest testified that they initially understood that they would be compensated monetarily for any time worked over forty hours per week. Both Minas and Guest testified that they worked over forty hours a week on several occasions. Minas testified that she accumulated 284½ hours in unpaid overtime. Guest estimated that she accumulated 265 hours of unpaid overtime. Neither Minas nor Guest was ever paid for overtime. Minas and Guest testified that they initially kept records of the their work hours; however, Dr. Hillier stopped them from keeping the records. According to Minas and Guest, Dr. Hillier decided that they had accumulated too much overtime, shredded their time sheets and gave them compensatory time for the accrued overtime. Dr. Hillier denied tearing the time sheets and testified that it was his understanding Minas and Guest would be salaried employees from the start. However, Catherine Benvenutti, who assisted Dr. Hillier with the hiring of Minas and Guest, testified that Minas and Guest were hired as non-exempt employees for purposes of the FLSA. Dr. Hillier also testified that Minas and Guest agreed to accept compensatory time in order to help save money for Dr. Hillier and the clinic. Additional facts will be presented during our discussion of the issues.

ANALYSIS OF THE ISSUES PRESENTED

I. Did the trial court err when it denied Hillier's request to take additional depositions?
¶ 5. Dr. Hillier argues that the trial court committed reversible error by disallowing depositions of several allegedly material witnesses and thereby limited his opportunity for discovery. For our discussion, we will combine issues one and five since both involve the appropriateness of the trial judge's refusal to allow Dr. Hillier to take additional discovery by way of depositions.
¶ 6. It is well established law that the trial court has wide and considerable discretion in matters relating to discovery; its order will not be disturbed unless there has been an abuse of discretion. Clark v. *1038 Mississippi Power Co., 372 So.2d 1077, 1080 (Miss.1979); McCarty v. Kellum, 667 So.2d 1277, 1285 (Miss.1995). We will affirm unless there is a definite and firm conviction that the court below clearly erred in reaching its conclusion after weighing the relevant factors. Kinard v. Morgan, 679 So.2d 623, 625 (Miss.1996).
¶ 7. Dr. Hillier contends that the trial court unjustly limited discovery by outright denying discovery; therefore, according to Dr. Hillier, he was not able to prepare a proper defense. Specifically, Dr. Hillier complains of the trial judge's refusal to allow him to depose Kathy Anthony, alleged by Hillier to be a crucial witness, and of the trial judge's allowing Minas and Guest to call witnesses at trial whom Dr. Hillier had not been allowed to depose. Dr. Hillier argues that such denial and ruling unduly prejudiced his case. The following facts are relevant to our discussion of this issue.
¶ 8. On November 14, 1997, the trial date was set for March 9, 1998. After the trial date was set, the parties engaged in preliminary discovery. Dr. Hillier served interrogatories on Guest and Minas and also scheduled depositions. Minas and Guest responded to Dr. Hillier's interrogatories on December 8 and December 11, 1997, and at that time, identified their fact witnesses. A pretrial conference was held on February 3, 1998. An order was filed by the court requiring both parties to jointly file a proposed pretrial order no later than February 16, 1998, and the parties complied with the court's directive by filing a joint pretrial order on February 18, 1998. Thereafter, Dr. Hillier noticed the deposition of Minas for February 25, 1998. On March 7, 1998, Dr. Hillier sent subpoenas and notices of deposition in an effort to depose three of Guest's and Minas's witnesses: Diana Bennett, Nancy Stasel, and George William Humphries, III. The depositions were noticed for March 9, 1998, the day of trial. Guest and Minas filed a motion for a protective order alleging that Dr. Hillier should not be allowed to take depositions on the day of the trial and that two day's notice was unreasonable under the circumstances and under Mississippi Rules of Civil Procedure. The trial court held a hearing and quashed the three deposition subpoenas. In that same hearing, the trial court continued the trial date due to conflicts with its docket. The new trial date was set for April 14, 1998.
¶ 9. On March 13, 1998, Dr. Hillier sent to Minas and Guest notices to take the depositions of Kathy Anthony, Diana Bennett, George Williams Humphries, III, Nancy Stasel, Shirleen Carter, and Peggy Wagner. The depositions were noticed for March 20, 1998. Guest and Minas filed a second motion for a protective order, alleging that Dr. Hillier should not be granted a "windfall" because the original trial date had been changed due to conflicts with the court's docket and that Guest and Minas should not be penalized. On March 30, 1998, the court quashed the five notices and ordered that all forms of discovery be halted. On April 3, 1998, Dr. Hillier filed for an emergency stay with the Mississippi Supreme Court, which was denied. On April 14, 1998, Dr. Hillier filed an application for additional time in order to preserve the testimony of Kathy Anthony. This motion was denied, and the case proceeded to trial. Bennett and Stasel, two of the persons Dr. Hillier had sought to depose, testified at trial for Minas and Guest.
¶ 10. Based on these facts, we find that the trial court did not abuse its considerable discretion. The facts reflect that Dr. Hillier was dilatory. He waited until the day of trial before attempting to depose witnesses who were known to him as early as the preceding December when the identity of these witnesses had been made known to him through answers to interrogatories. They were also identified in the pretrial order submitted by the parties on February 18, 1998. Since Dr. Hillier knew about Guest's and Minas's fact witnesses as early as December 12, 1997, he had a reasonable opportunity to take the depositions *1039 without infringing upon the trial date. As aptly stated by the trial court in overruling Dr. Hillier's objection to allowance of the testimony of one of the fact witnesses, "[t]he opportunity was present; counsel for the defendant did not avail himself of that." We will not put the trial court in error when Dr. Hillier failed to take depositions in a timely fashion. Dr. Hillier argues that since the court continued the case on its own motion for one month, the trial court erred in not allowing him the opportunity to depose the witnesses. We disagree. In denying Dr. Hillier's motion for new trial, the trial judge noted that he cut off all discovery based on an extensive pre-trial hearing in chambers. The court was within its discretion in not allowing further discovery.
¶ 11. As to the trial court's denial of allowing Kathy Anthony to be deposed, Dr. Hillier failed to show that he was prejudiced by this refusal. At the time the trial date was originally scheduled, Anthony had agreed to appear at trial. However, after the trial date was reset, Dr. Hillier requested a continuance in order to depose Anthony because he claimed that Anthony had moved in excess of 100 miles away from Hancock County. The trial court denied the motion for continuance.
¶ 12. Dr. Hillier argues that Anthony's testimony was essential because she was familiar with his character and had worked with him. In denying the motion, the trial court stated that since the defamation claim had been dismissed, he did not think Dr. Hillier's character was at issue and any evidence that Anthony would present would be "extraneous at best." We agree. Thus, we find that the trial court did not abuse his discretion in denying the motion for continuance.
¶ 13. Dr. Hillier further contends that Anthony would have testified that Minas and Guest were professional nurses, thus exempted from the FLSA. A review of the record indicates that Dr. Hillier and Michael Anderson testified in detail about Minas's and Guest's duties. Therefore, Anthony's testimony regarding Minas's and Guest's duties would have been cumulative of that testimony. Moreover, the exemption status of an employee under the FLSA is determined not by the label or title attached to the employee but by the work actually done by the employee on a daily basis. We find no prejudice accruing to Dr. Hillier from the refusal to allow the deposition of Kathy Anthony as we find that the jury was amply informed of the day to day duties of Minas and Guest. Accordingly, we conclude that the trial court did not abuse its discretion in disallowing Anthony's deposition.

II. Did the Trial Court commit reversible error in allowing jury instructions 6, 13, and the special verdict form instruction?
¶ 14. It is well established under Mississippi law that we do not review jury instructions in isolation; rather, the instructions are read as a whole to determine if the jury was properly instructed. Day v. Morrison, 657 So.2d 808, 814 (Miss.1995). Where it may be fairly charged that one or more instructions may have been confusingly worded, we should not reverse if other instructions clear up the confusing points. Id. On the other hand, where we find two or more instructions in hopeless and substantive conflict with each other, we often reverse. Id.
¶ 15. Dr. Hillier contends that Jury Instruction No. 6 contained an inaccurate statement of law. Instruction No. 6 instructs, in part, the following:
The Defendants have asserted certain affirmative defenses. The Defendants have the burden of proving each affirmative defense by a preponderance of the evidence, except one affirmative defense. With respect to the Defendants' affirmative defense that the Plaintiffs were professional employees not covered by the Fair Labor Standards Act, the Defendants have the burden of proving that *1040 affirmative defense by clear and convincing evidence.
Dr. Hillier contends that proving an exemption to the FLSA is a general defense requiring proof by a preponderance of the evidence and not the clear and convincing standard which the jury was instructed to apply.
¶ 16. Although we are unable to find any Mississippi or United States Supreme Court case specifically articulating the standard of proof for establishment of an exemption under FLSA, we do find some guidance in one United States Supreme Court case, Arnold v. Kanowsky, 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). The issue in Arnold was whether a business was liable for overtime wages of one of its employees. The answer lay not in an analysis of the type work performed by the employee but rather in a determination of whether the business was a retail or service establishment exempted under § 13(a)(2) of the FLSA. In holding that the business was not an exempted business, the Arnold court said, "[T]hese exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Id. at 392, 80 S.Ct. 453.
¶ 17. Dr. Hillier, relying primarily on one federal district court case, Fight v. Armour and Co., 533 F.Supp. 998, 1004 (W.D.Ark.1982), argues, as stated, that the appropriate standard of proof to establish an exemption under the FLSA is proof by a preponderance of the evidence. Although Fight does contain the statement that the employer must prove his claim of exemption by a preponderance of the evidence, we note that the focus in Fight was not on the appropriate standard of proof but rather on whether the employee's duties were sufficiently administrative or supervisory to qualify for an exemption from the overtime wage payment provisions of the FLSA. Thus, we do not find Fight persuasive on the issue before us. None of the other cases cited by Dr. Hillier specifically pronounce that the burden of proof standard is by a preponderance of the evidence. See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 291, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); A.H. Phillips v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945).
¶ 18. In light of the admonition laid down by the United States Supreme Court in Arnold that "these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit," we believe the better view as to the appropriate standard is that the proof must be by clear and convincing evidence. See Clark v. J.M. Benson Co., Inc., 789 F.2d 282, 286 (4th Cir.1986); Shockley v. City of Newport News, 997 F.2d 18 (4th Cir.1993); Legg v. Rock Products Mfg. Corp., 309 F.2d 172 (10th Cir.1962). The fifth circuit has stated in Rachal v. Allen, 321 F.2d 449, 453 (5th Cir.1963) that "the burden is a heavy one" and that these exemptions are to be narrowly construed against the employers seeking to assert them. See also Dalheim v. KDFW-T.V., 918 F.2d 1220, 1224 (5th Cir.1990); Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1137 (5th Cir.1988). Since we conclude that the employer's burden in proving an exemption is one of clear and convincing evidence, we affirm the trial court's grant of jury instruction six.
¶ 19. Dr. Hillier next contends that jury instruction 13, initially numbered P-8, and the special verdict form, when taken together, produced a confusing and inappropriate standard for the jury to follow in their deliberations. Instruction 13 states in part:
In addition to claiming actual damages, the Plaintiffs are also seeking liquidated damages. Liquidated damages are double *1041 damages which may be awarded if you find that the Defendant willfully violated the Fair Labor Standards Act.

A violation of the Fair Labor Standards Act is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Fair Labor Standards Act. In other words, a violation of the Fair Labor Standards Act is willful when an employer knowingly violates the Fair Labor Standards Act, or violates the Fair Labor Standards Act with reckless indifference to whether or not the employer is violating the law.
(emphasis added).
¶ 20. The special verdict form contained the following question, which was answered in the affirmative by the jury:
Do you find from a preponderance of the evidence that the Defendant knowingly violated the Fair Labor Standards Act, or violated the Fair Labor Standards Act with reckless indifference to whether or not he was violating the Fair Labor Standards Act?
¶ 21. Dr. Hillier argues that the willfulness standard was incorrectly applied and should only apply if a two or three year statute of limitations is applicable. He further argues that the correct standard to be applied is whether the employer was reasonable, acted in good faith and had reasonable grounds for believing that its act or commission was not a violation of FLSA. Dr. Hillier did not preserve this issue at trial. When the trial judge asked whether there were any objections to instruction P-8, renumbered as instruction 13, the record shows the following:
THE COURT: P-7 will be given. Any objection to P-8?
MR. KETCHERSIDE (Counsel for defense):
Yes, just to the extent that there was never an allegation of wilful acts on behalf of either the defendants. And again, I reviewed the complaint and the joint pretrial order. It always just said "intentional." And I think that to change basically theto change the allegations of this litigation by jury instruction, it's too late to change that, and I would object to that. And I think they should be bound by "intentional." And that also shows up in knew or showed reckless disregard or reckless indifference. None of those things were pled. And one of my concerns about this thatis that Dr. Hillier may have liability insurance for acts of negligence and reckless indifference. Those things would probably fit under that. He would have been provided with an attorney paid by his insurance company, possibly have coverage for this. The only word that was ever used in the complaint and in the joint pretrial order was "intentional." And to now lower that standard so that they could be found culpable for indifference, and I thinkWell we'll go into those later. But that was the problem I had.
¶ 22. It is well established that where a defendant fails to object to an issue at the trial, the issue is waived on appeal. Fleming v. State, 604 So.2d 280, 301-02 (Miss. 1992). Dr. Hillier did not raise the issue at trial, nor did he raise the issue in his motion for JNOV or new trial. In fact, Dr. Hillier's counsel advocated in his motion for JNOV that the "willful" standard was appropriate. Counsel stated that:
The proper standard is whether or not the acts were done willfully. The jury should have been instructed that `willful' means an act done with evil motive or corrupt intent.
We, therefore conclude that the issue is procedurally barred.
¶ 23. Although we will not address whether jury instruction 13 instructed the jury on the wrong standard of proof, we will note as plain error and examine the issue of the appropriateness of the trial court's awarding liquidated damages in light of the court having given the instruction. It has been established *1042 that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice. Gray v. State, 549 So.2d 1316, 1321 (Miss.1989). Under the FLSA, liquidated damages are to be awarded at the discretion of the court. See Bernard v. IBP, Inc. of Nebraska, 154 F.3d 259 (5th Cir.1998). We have found no case law assigning such prerogative to the jury.
¶ 24. Although Dr. Hillier did not object to the jury being instructed on the issue of liquidated damages, we believe that, since the jury was instructed on the issue, it may have included such damages in the amount awarded by it. That this may have been the case is evidenced by the fact that during jury deliberations, the jury sent the trial court a note asking, "[i]f we give them liquidated damages, does it have to be double, or may we decide if it could be more or less?" The trial court responded in a note back to the jury that it had all the instructions it needed and to continue its deliberations.
¶ 25. After the jury awarded damages, the trial court, in its final amended judgment, awarded liquidated damages. Because of the obvious confusion of the jury on the liquidated damages issue, we cannot say with certainty that the jury did or did not include liquidated damages in the amount it awarded. Clearly, this confusion was caused by the language regarding liquidated damages in instruction 13. Therefore, in order to insure that a miscarriage of justice does not occur and to prevent what otherwise may amount to a windfall for Minas and Guest, we reverse the trial court's award of liquidated damages and remand for a new trial on the FLSA damages only. The jury's verdict and judgment on the breach of contract claims are affirmed.
¶ 26. Section 216 of the FLSA provides that an employer who violates the FLSA shall be liable to the affected employee in the amount of unpaid wages or overtime compensation and in an additional equal amount as liquidated damages. Section 260 of the FLSA authorizes the court, in its sound discretion, to award no liquidated damages or award any amount thereof not to exceed the amount specified in § 216 if the employer shows to the satisfaction of the court that the act or omission giving rise to the violation was in good faith and that the employer had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended.
¶ 27. Clearly § 260 of the FLSA places the responsibility solely with the trial court to determine if an employer's actions, giving rise to the FLSA violation, was in good faith and under the reasonable belief that the employer was not in violation of the act. If the trial court makes such a determination, it may award no liquidated damages or award such damages as it deems appropriate, not to exceed the actual amount of the unpaid wages. Since this is the trial judge's call, on remand, he should not invoke the assistance of the jury in any shape, form or fashion. The jury's role should be limited to determining the amount of unpaid wages only. It should not be instructed regarding liquidated damages in any manner.

III. Did the trial court commit reversible error when it awarded attorney's fees?
¶ 28. The standard of review from a trial court's award of attorney's fees is abuse of discretion. Par Industries, Inc. v. Target Container Co., 708 So.2d 44, 54 (Miss.1998). Dr. Hillier argues that Minas and Guest were required to submit a bill showing only the hours actually spent on the FLSA claim. At a hearing on the motion, Guest and Minas offered affidavits of their counsel with itemized statements. Counsels also estimated the time spent on the FLSA claim. The trial judge considered the information provided by Guest and Minas and combined that information with his own personal experience. He even remarked that he had considerable experience with FLSA *1043 claims. Under these circumstances, we are satisfied that the trial judge did not abuse his discretion. This issue is therefore without merit. We note, however, that, since we are reversing and remanding for a new trial on the issue of damages, the trial court, on a final award of attorney's fees, should consider the fact that this case has been fully researched and tried.
¶ 29. THE JUDGMENT OF HANCOCK COUNTY IS AFFIRMED AS TO: THE CONTRACT CLAIMS, THE APPELLANTS' LIABILITY FOR VIOLATION OF THE FLSA, AND THE AWARD OF ATTORNEY'S FEES, SUBJECT TO MODIFICATION AS SPECIFIED IN THIS OPINION, BUT IS REVERSED AS TO DAMAGES ON THE FLSA CLAIMS AND REMANDED FOR A NEW TRIAL ON THE ISSUE OF DAMAGES ONLY ON THE FLSA CLAIMS. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., concur.