IRVING, P.J., for the Court:
¶ 1. On October 15, 2003, Edward O’Keeffe fell in the shower in his hotel room at Casino Magic in Biloxi, Mississippi. On June 1, 2005, O’Keeffe brought a premises-liability action in the Harrison County Circuit Court against Casino Magic. In his complaint, O’Keeffe alleged that the shower was a hazardous condition, and Casino Magic was negligent for allowing the condition to exist. O’Keeffe claimed that his fall resulted in injuries to his lumbar and cervical spine, and he sought damages for medical expenses, pain and suffering, disability, and mental anguish. On February 9, 2009, a jury returned a verdict in favor of Casino Magic. On February 13, 2009, O’Keeffe filed a motion for a new trial, which the circuit court denied.
¶ 2. Feeling aggrieved, O’Keeffe appeals and argues that: (1) the circuit court erred in excluding the expert testimony of Dr. Bert Bratton; (2) the circuit court erred in excluding Dr. Bratton’s report and any reference to his report by other experts; (3) the exclusion of Dr. Bratton’s opinions resulted in prejudice, and (4) the circuit court erred in granting jury instruction number six.
¶ 3. Finding no reversible error, we affirm.
FACTS
¶ 4. O’Keeffe filed responses to Casino Magic’s interrogatories on January 6, 2006, and listed Dr. M.F. Longnecker, Dr. James Doty, and Dr. James Dyess as his treating physicians. Dr. Longnecker, an orthopedic surgeon, evaluated O’Keeffe on November 20, 2003, shortly after his fall in the shower at Casino Magic. Dr. Long-necker had previously operated on O’Keeffe in 1999 for severe spinal stenosis and disc ruptures. In his deposition, Dr. Longnecker testified that O’Keeffe had made a full recovery from the 1999 surgery. When Dr. Longnecker saw O’Keeffe in 2003, O’Keeffe explained that he had fallen in a shower at Casino Magic and complained of persistent back pain. Dr. Longnecker advised O’Keeffe to schedule an MRI, but Dr. Longnecker did not treat O’Keeffe again after the 2003 visit due to the doctor’s retirement. O’Keeffe had an MRI on June 9, 2004, which revealed defects in discs L2-3, L3-4, and L4-5.
All discovery must be completed within ninety days from service of an answer by the applicable defendant. Additional discovery time may be allowed with leave of court upon written motion setting forth *729 good cause for the extension. Absent special circumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial.
*728 ¶ 5. Dr. Doty, an orthopedic surgeon, examined O’Keeffe on November 1, 2004. O’Keeffe again complained of lower-back pain, which he attributed to his fall at Casino Magic. Dr. Doty performed surgery on O’Keeffe on November 5, 2004, and testified in his deposition that O’Keeffe had a new disc herniation at L2-3 and a re-herniation at L4-5. Dr. Doty further testified that the fall at Casino Magic caused O’Keeffe’s lower-back pain.
¶ 6. Dr. Dyess, who practices internal medicine, treated O’Keeffe from June 2004 through January 2009. In his deposition, Dr. Dyess testified that O’Keeffe’s lower-back pain was related to his fall at Casino Magic. Additionally, Dr. Dyess opined that the disc herniation at L2-3 was caused by O’Keeffe’s fall at Casino Magic.
¶ 7. On October 27, 2007, O’Keeffe designated Dr. Crawford Steck, his treating neurosurgeon, as an expert. Casino Magic filed a motion to strike and argued that Dr. Steck’s designation was untimely under Rule 4.04 (A) of the Uniform Rules of Circuit and County Court.[1] On November *729 7, 2008, a hearing was held on Casino Magic’s motion to strike Dr. Steck, and the circuit court found that because Dr. Steck had only recently performed surgery on O’Keeffe, special circumstances existed, and Dr. Steck would be allowed to testify as an expert. The circuit court also granted O’Keeffe’s request for a continuance of the trial to permit him to recover fully from surgery and to obtain Dr. Steck’s opinion.
¶ 8. On November 21, 2008, O’Keeffe filed an amended expert designation that included Dr. Bratton, a neurosurgeon. Casino Magic filed a motion to strike Dr. Bratton, arguing that the designation was untimely and that the continuance did not open the door for new expert designations. On December 12, 2008, a hearing was held on Casino Magic’s motion to strike Dr. Bratton. O’Keeffe’s counsel had had considerable difficulty obtaining Dr. Steck’s deposition; therefore, he sought Dr. Brat-ton’s testimony in the event that Dr. Steck remained uncooperative. Dr. Steck had cancelled a deposition scheduled for December 8, 2008, but he had agreed to reschedule the deposition for January 5, 2009. The circuit court ordered the deposition to go forward, but if Dr. Steck remained uncooperative, Dr. Bratton would be permitted to testify as an expert in lieu of Dr. Steck.
¶ 9. Dr. Steck’s deposition was taken on January 5, 2009. Dr. Steck had evaluated O’Keeffe on August 11, 2008, and testified in his deposition that O’Keeffe complained of pain in his back and lower extremities; however, O’Keeffe did not mention his fall at Casino Magic. On August 19, 2008, Dr. Steck performed surgery on O’Keeffe. Dr. Steck testified that he did not find a herniated disc at L2-3; however, he found spinal stenosis at L4-5. Dr. Steck diagnosed O’Keeffe with recurring spinal sten-osis and testified that while O’Keeffe’s fall did not cause the stenosis, it could have made the stenosis symptomatic.
¶ 10. Although Dr. Steck gave his deposition, O’Keeffe filed a motion to allow the testimony of Dr. Bratton on January 12, 2009. Casino Magic opposed the motion, arguing that Dr. Bratton’s designation was untimely under Rule 4.04 and that no special circumstances existed that would permit Dr. Bratton’s expert designation. The circuit court heard O’Keeffe’s motion on January 23, 2009, and held that because Dr. Steck had appeared at the deposition and cooperated, Dr. Bratton would not be allowed to testify.
¶ 11. On January 29, 2009, Dr. Dyess gave a second deposition.[2] In preparation for his deposition, Dr. Dyess reviewed a report prepared by Dr. Bratton and conferred with him by telephone. During the deposition, Casino Magic objected to testimony related to Dr. Bratton’s opinions or his report. Following the deposition, Casino Magic filed a motion to strike Dr. Dyess’s deposition arguing that his reliance on Dr. Bratton’s opinions was improper given that the circuit court had struck Dr. Bratton as an expert. The circuit court ruled that the portions of Dr. Dyess’s deposition referring to Dr. Bratton would be stricken.
¶ 12. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
*730 ANALYSIS AND DISCUSSION OF THE ISSUES

1. Exclusion of Dr. Bratton

¶ 13. O’Keeffe argues that the circuit court erred in excluding Dr. Bratton as a late-designated expert. O’Keeffe contends that the designation was timely under Rule 4.04 because he designated Dr. Bratton on November 21, 2008, seventy-three days before the February 2, 2009 trial date.
¶ 14. “A trial court’s admission or exclusion of expert testimony is reviewed for abuse of discretion.” Worthy v. McNair, 37 So.3d 609, 614 (¶ 13) (Miss. 2010) (citing Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss. 2003)). “The trial court’s decision will stand unless the reviewing court concludes that the decision was arbitrary and clearly erroneous, amounting to an abuse of discretion.” Id. (citing McLemore, 863 So.2d at 34 (¶ 4)). Furthermore, “[mjatters of discovery are left to the sound discretion of the trial court, and discovery orders will not be disturbed unless there has been an abuse of discretion.” Scoggins v. Baptist Mem’l Hosp.-Desoto, 967 So.2d 646, 648 (¶ 8) (Miss.2007) (quoting Earwood v. Reeves, 798 So.2d 508, 514 (¶ 19) (Miss. 2001)).
¶ 15. O’Keeffe mistakenly uses the continued trial date for purposes of determining timely designation under Rule 4.04. Following the November 7, 2008 hearing, the circuit court continued the trial date from December 8, 2008 to February 2, 2009. However, the circuit court granted the continuance for the express purpose of allowing O’Keeffe to fully recover from his surgery and to obtain the testimony of Dr. Steck. The continuance did not give O’Keeffe a new opportunity to designate additional experts.
¶ 16. In Hillier v. Minas, 757 So.2d 1034, 1038 (¶ 8) (Miss.Ct.App.2000), Dr. Robert Hillier noticed depositions two days before trial. The plaintiffs filed a motion for a protective order arguing that they had not received reasonable notice of the depositions. Id. The circuit court quashed the deposition subpoenas and continued the trial date “due to conflicts with its docket.” Id. Dr. Hillier re-noticed the depositions, and the plaintiffs “filed a second motion for a protective order, alleging that Dr. Hillier should not be granted a ‘windfall’ because the original trial date had been changed.... ” Id. at (¶ 9). The circuit court refused to allow Dr. Hillier to take additional depositions following the continuance “and ordered that all forms of discovery be halted.” Id.
¶ 17. This Court found that the circuit court did not abuse its discretion in refusing to allow Dr. Hillier’s depositions to go forward. Id. Additionally, this Court rejected Dr. Hillier’s argument that the continued trial date renewed his opportunity to depose witnesses. Id.
¶ 18. We see no reason to hold differently here. At the November 7, 2008 hearing, the circuit court made it clear that the continuance was not intended to allow either O’Keeffe or Casino Magic to designate additional experts. Instead, the circuit court granted a continuance for the express purpose of allowing O’Keeffe to recover from his recent surgery and to obtain the expert opinions of his neurosurgeon, Dr. Steck.[3] When O’Keeffe encountered difficulties in obtaining Dr. Steck’s deposition, he designated Dr. Bratton. The circuit court ordered that Dr. Brat-ton’s testimony would be allowed only if Dr. Steck refused to give a deposition. *731 Dr. Steck gave a deposition; therefore, the circuit court did not abuse its discretion in excluding Dr. Bratton’s testimony. This issue is without merit.

2. Exclusion of Dr. Bratton’s Report

¶ 19. O’Keeffe also argues that the circuit court erred in excluding portions of Dr. Dyess’s deposition testimony that referred to Dr. Bratton or his report. O’Keeffe contends that Dr. Dyess’s reliance on Dr. Bratton’s opinions was permissible under Rule 703 of the Mississippi Rules of Evidence. Rule 703 states:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
However, this Court has held that “[wjhile [Rule 703] allows an expert to use certain other sources in forming his or her own opinion, Rule 703 is not a vehicle for admissibility of otherwise inadmissible evidence.” Koestler v. Koestler, 976 So.2d 372, 381 (¶ 32) (Miss.Ct.App.2008) (emphasis added). Once Dr. Steck gave his deposition, the circuit court excluded Dr. Bratton as an expert. O’Keeffe then attempted to insert Dr. Bratton’s opinions into the record through Dr. Dyess’s deposition testimony. While Rule 703 does permit experts to rely on facts or data that are otherwise inadmissible, it may not be used to circumvent court orders. Therefore, we do not find that the circuit court abused its discretion in excluding references to Dr. Bratton or his report. This issue is without merit.

3. Prejudice

¶20. O’Keeffe contends that he was prejudiced by the exclusion of Dr. Bratton, who was prepared to testify that O’Keeffe’s disc herniation was caused by his fall at Casino Magic. Based on our review of the record, we do not find that Dr. Bratton’s exclusion prejudiced O’Keeffe. At trial, O’Keeffe presented the deposition testimonies of Dr. Doty and Dr. Dyess, who both testified that the fall at Casino Magic caused O’Keeffe’s lower-back pain and resulted in a disc herniation at L2-3. Even Casino Magic’s neurological expert, Dr. Eugene Quindlen, testified that the disc herniation at L2-3 was related to the fall. Therefore, Dr. Bratton’s testimony relating O’Keeffe’s injuries to his fall at Casino Magic would have been cumulative. This issue is without merit.

Jp. Jury Instruction Number Six

¶ 21. O’Keeffe argues that the trial court erred in granting jury instruction number six. O’Keeffe contends that instruction number six had the effect of eliminating the comparative-negligence rule and resurrecting the open-and-obvious defense as a complete bar to recovery.
 ¶ 22. “When [an appellate court] reviews a claim of trial court error in granting or denying a jury instruction, [it is] required to review all of the instructions as a whole.” Beverly Enters., Inc. v. Reed, 961 So.2d 40, 43 (¶8) (Miss.2007) (citing Richardson v. Norfolk & S. Ry., 923 So.2d 1002, 1010 (¶ 19) (Miss.2006)). “Defects in specific instructions will not mandate reversal when all of the instructions, taken as a whole[,] fairly—although not perfectly—announce the applicable primary rules of law.” Id. (citing Burton v. Barnett, 615 So.2d 580, 583 (Miss.1993)).
¶ 23. The challenged instruction states: As used in these instructions, a “danger” [sic] or “hazardous” condition is defined as a condition which is likely or probable to cause injury to a patron who is exer- *732 rising reasonable care for his own safety. Simply because the Plaintiff fell while in the shower at the Defendant[’s] hotel or that the Plaintiff sustained an alleged injury does not mean that the shower stall complained of was an unreasonable “danger” or “hazard” or that the Defendant was negligent. Conditions which are not likely to cause injury or damage to patrons who exercise reasonable care for their own safety ... may not be characterized as “hazardous” or “dangerous” simply because an accident might have occurred. Therefore, if you find from the evidence in this case that there was no condition present which was reasonably likely to cause injury to a patron who was exercising reasonable care for his own safety, then there was no “danger” or “hazard[,]” and the Plaintiff may not recover from the Defendant.
O’Keeffe argues that under instruction number six, Casino Magic would be exonerated if the jury found that he did not exercise reasonable care. We disagree. Instruction number six simply defined the terms “danger” and “hazard” and explained that the mere occurrence of a fall or other accident on a business premises is not sufficient to attribute negligence to the owner — a correct statement of the law. The instruction required O’Keeffe to prove that a danger or hazard existed in order to recover, but it did not bar his recovery if he failed to exercise reasonable care. In fact, the jury was instructed that O’Keeffe could recover even if he was negligent. Jury instruction number eleven states in pertinent part:
The Court instructs you that if, based upon the instruction of this Court, you find that the Defendant[,] Biloxi Casino Corp. d/b/a Casino Magic-Biloxi, was negligent, entitling the Plaintiff to damages, if any, you may reduce any verdict for damages which you find for the Plaintiff by an amount or percentage which reflects the negligence, if any, of Edward O’Keeffe, in connection with his accident. This reduction is for what is known as comparative negligence.
We do not find that instruction number six had the effect of eliminating O’Keeffe’s possibility of recovery under comparative negligence. Instruction number six did not bar recovery if O’Keeffe failed to exercise reasonable care, and the jury was specifically instructed on comparative negligence in jury instruction number eleven.
¶ 24. Furthermore, we do not find that by requiring O’Keeffe to exercise reasonable care for his safety, instruction number six effectively resurrected the open-and-obvious defense as a complete bar to recovery. As a business owner, Casino Magic owed O’Keeffe, an invitee, a duty to maintain the hotel in a reasonably safe condition. Pigg v. Express Hotel Partners, LLC, 991 So.2d 1197, 1199 (¶5) (Miss.2008). However, O’Keeffe was “still required to use[,] in the interest of his own safety[,] that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance.” Fulton v. Robinson Indus., Inc., 664 So.2d 170, 175 (Miss.1995) (citing Tate v. S. Jitney Jungle Co., 650 So.2d 1347, 1351 (Miss.1995)). Therefore, we do not find that jury instruction number six misstated the law in Mississippi by requiring O’Keeffe to exercise reasonable care or had the effect of barring O’Keeffe’s recovery under the open-and-obvious rule.
¶ 25. Based on our review of the jury instructions as a whole, we do not find that the circuit court erred in granting instruction number six. This issue is without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS *733 OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.

. Rule 4.04(A) states:

. Dr. Dyess gave his first deposition on November 9, 2006; however, he continued treating O’Keeffe after the 2008 surgery by Dr. Steck.

. Dr. Steck’s designation was also untimely; however, the circuit court found that special circumstances existed because he had recently performed surgery on O’Keeffe.